IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-02418-MEH

VICTOR CEJKA,
JAMES WALKER,
STEVEN WASCHER, and
JAMIE LYTLE,

      Plaintiffs,

v.

VECTRUS SYSTEMS CORPORATION, f/k/a Exelis Systems Corporation,

      Defendant.

---

**ORDER ON DEFENDANT VECTRUS SYSTEMS CORPORATION'S
RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW
AS TO PLAINTIFFS STEVEN WASCHER'S AND JAMES WALKER'S
CLAIMS BASED ON CONSTRUCTIVE DISCHARGE [ECF NO. 318]**

---

**Michael E. Hegarty, United States Magistrate Judge**.

      Plaintiffs initiated this employment action on October 30, 2015, against their former employer, Defendant Vectrus Systems Corp. ("Vectrus"), alleging that they suffered adverse employment actions in retaliation for reporting to the United States military what they believed to be conduct by Defendant that adversely affected security at Bagram Air Force Base in Afghanistan. This case was tried to a jury for common law retaliatory termination (Claim I) (all Plaintiffs) and violation of 10 U.S.C. § 2409, the Department of Defense whistleblower statute (Claim II) (Plaintiff Walker). The jury found for Defendant on Plaintiff Cross's claim and for the remaining Plaintiffs under both the common law claims (all Plaintiffs) and the statutory claim (Plaintiff Walker). In the interim, Plaintiff Cross has settled with Defendant.

      Here, Defendant seeks judgment as a matter of law on Plaintiffs Wascher's and Walker's theory of constructive discharge, which was used to support their respective claims for retaliatory

discharge in violation of public policy and Walker's statutory whistleblower claim. ECF No. 318. Defendant argues that a constructive discharge theory is untenable here, because these Plaintiffs admitted at trial they were laid off by Defendant. Even though Plaintiffs did testify to that effect, I deny Defendant's motion, because I find that Plaintiffs' claims for constructive discharge in violation of public policy under Colorado law and under 10 U.S.C. § 2409 are supported both by the law and the evidence presented over fifteen trial days.

## LEGAL STANDARD

Federal Rule of Civil Procedure 50(b) provides that "[n]o later than 28 days after the entry of judgment . . . the movant may file a renewed motion for judgment as a matter of law . . . ." Fed. R. Civ. P. 50(b). In analyzing a Rule 50(b) motion, courts should construe the evidence in the record in a light most favorable to the nonmoving party. *Tyler v. RE/MAX Mountain States, Inc.*, 232 F.3d 808, 812 (10th Cir. 2000). Courts must not "weigh evidence, judge witness credibility, or challenge the factual conclusions of the jury." *Deters v. Equifax Credit Info. Servs., Inc.*, 202 F.3d 1262, 1268 (10th Cir. 2000). "Judgment as a matter of law is appropriate 'only if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position.'" *Tyler*, 232 F.3d at 812 (quoting *Finley v. United States*, 82 F.3d 966, 968 (10th Cir. 1996)). Motions under Rule 50(b) "should be cautiously and sparingly granted." *Lucas v. Dover Corp., Norris Div.*, 857 F.2d 1397, 1400 (10th Cir. 1988) (quoting *EEOC v. Prudential Fed. Sav. & Loan Ass'n*, 763 F.2d 1166, 1171 (10th Cir. 1985)).

## ANALYSIS

Defendant properly characterizes Plaintiffs' claims as being premised on a theory of constructive discharge. *See* Mot. 2, ECF No. 318. To prove constructive discharge under Colorado law, "a plaintiff must present sufficient evidence establishing deliberate action on the part of an

employer which makes or allows an employee's working conditions to become so difficult or intolerable that the employee has no other choice but to resign." *Wilson v. Bd. of Cty. Comm'rs of Adams Cty.*, 703 P.2d 1257, 1259 (Colo. 1985). "[W]hether the actions of an employer amount to a constructive discharge depends upon whether a reasonable person under the same or similar circumstances would view the new working conditions as intolerable, and not upon the subjective view of the individual employee." *Id*. at 1259–60.

Defendant insists that the first element (the Plaintiffs in question *resigned* their employment) is not satisfied because "both Plaintiffs Wascher and Walker testified unequivocally that they did not resign or quit, and in fact were laid off after their positions as Security Investigators were eliminated and they refused other, different, lower positions." Mot. 2. In other words, Defendant pursues a theory that these two Plaintiffs were terminated, they did not resign, and that judgment must be entered against them because they have painted themselves in a corner by pursuing a constructive discharge theory. Defendant also contends that the second element (intolerability) is not satisfied because even assuming Plaintiffs did resign, the evidence at trial was insufficient for a rational jury to find that their transfer to other operating bases in October 2013 or Defendant's offer of an alternative Biometric Clerk position to them was so intolerable that they had no choice but to resign. Finally, Defendant argues that the doctrine of judicial estoppel precludes Plaintiff Wascher from even bringing a constructive discharge claim. I disagree for a host of reasons.

I.  **There Was Sufficient Evidence for a Jury to Find That Plaintiffs Had No Choice but to Resign Due to Difficult or Intolerable Conditions.**

As a threshold matter, Defendant puts undue emphasis on Plaintiffs' own characterization of their separation from employment. The terminology used by a plaintiff is "not dispositive" of whether separation amounts to a constructive discharge. *See Romero v. Helmerich & Payne Int'l Drilling Co.*, No. 15-cv-00720-NYW, 2017 WL 3608194, at *3 (D. Colo. Aug. 22, 2017) (*Romero

3

*I*). In *Romero I*, the Honorable Nina Y. Wang also evaluated constructive discharge in the context of a claim for wrongful discharge in violation of public policy. *Id.* at *1. In denying the defendant's summary judgment motion, the court stated that the employee's "testimony that he was fired, viewed within the context of all of his testimony, is not dispositive of whether he was constructively discharged." *Id.* at *3. The court took "a step back from the semantics of 'fired' versus 'quit,'" and "consider[ed] the general remedial nature of the Colorado common law claim." *Id.*

Furthermore, I believe it would be error to grant judgment as a matter of law here because the evidence is susceptible to multiple interpretations. The facts of this case, including the evidence of Defendant's treatment of Plaintiffs after the whistleblowing events, adequately support both a resignation and a constructive discharge claim. The Tenth Circuit's discussion in *Strickland v. United Parcel Service, Inc.*, 555 F.3d 1224 (10th Cir. 2009), is particularly instructive and supports my conclusion. The issue there was whether an employee who turned in her company laptop and informed her supervisor she was leaving intended to end her employment, when she later testified she did not believe she had quit or resigned at that time. *Id.* at 1227–29. In reversing the district court's grant of judgment as a matter of law in the employer's favor, the Tenth Circuit made clear that some ambiguity within an employee's testimony does not automatically defeat a constructive discharge claim:

> The district court granted judgment as a matter of law because it concluded Strickland did not intend to terminate her employment when she stopped working. Parts of her testimony supported such a finding. Other parts of her testimony, however, revealed ambiguity on the issue. Strickland testified she would not return if she had to work for Roten. She also testified she was "done" and "at her wits end."
>
> The existence of constructive discharge is an issue of fact to be resolved by the jury, and judgment as a matter of law is only appropriate if the evidence is susceptible to but one interpretation. The testimony here is susceptible to multiple interpretations. A jury could find Strickland intended only to take temporary leave. On the other hand, a jury could alternatively find she left UPS with no intention of returning to work under Roten. While she expressed a hope that UPS would offer her a different

4

> position where she would have no contact with Roten, such a hope did not necessarily negate her intent to permanently stop working in her former position. Since the evidence could have been interpreted by a reasonable jury in Strickland's favor, the district court erred in granting judgment as a matter of law to UPS on the issue of constructive discharge.

*Id.* at 1228–29 (citing *Riske v. King Soopers*, 366 F.3d 1085, 1088–89 (10th Cir. 2004) (footnote omitted)).

This court faced a similar scenario in *Healion v. Great-West Life Assurance Co.*, 830 F. Supp. 1372, 1375 (D. Colo. 1993), although the procedural posture of *Healion* was different. The employee in *Healion* left a meeting with her supervisors without explanation, packed up her belongings, threw away papers, left the office, and failed to report back to work. *Id.* at 1373–74. A manager later contacted her and advised her of the employer's determination that she had resigned. *Id.* at 1374. The employee ultimately filed a lawsuit alleging, among other claims, termination in retaliation for filing a worker's compensation claim. *Id.* The district court found a genuine issue of material fact as to whether she "voluntarily resigned" or was terminated, stating that was "an issue of fact for the jury's consideration." *Id.* at 1375. Therefore, the court declined to grant summary judgment.

A few other cases inform my analysis as well. It seems clear from *James v. Sears, Roebuck & Co.*, 21 F.3d 989 (10th Cir. 1994), that a perceived demotion or reassignment may be an aggravating factor that makes staying on the job intolerable so as to support a finding of constructive discharge. *Id.* at 992–93 (citing *Cockrell v. Boise Cascade Corp.*, 781 F.2d 173, 177 (10th Cir. 1986)). And in *Walker v. Mountain States Telephone & Telegraph Co.*, 686 F. Supp. 269, 275 (D. Colo. 1988), the court found that the facts supported an inference of constructive discharge where the plaintiff was required to elect between reassignment and retirement and was not given the option of continuing his same work.

In the end, as many of the above cases emphasize, whether Plaintiffs resigned is a quintessential jury question. In *McInerney v. United Air Lines, Inc.*, 463 F. App'x. 709 (10th Cir. 2011) (unpublished), the Tenth Circuit considered a variation of our scenario. The *employer* there asserted that an employee voluntarily resigned—and was not terminated—and thus could not pursue a wrongful termination claim. *Id.* at 715. The court found no evidence that the employee told her employer that she was resigning; to the contrary, "[t]he evidence showed that [the employee] did not intend to resign, and that she desperately wanted to keep working at United." *Id.* at 716. In the course of its ruling, the Tenth Circuit stated that whether an employee resigned or was terminated is ultimately a fact question for the jury. *Id.* at 716–17 (assessing whether a jury "could reasonably find" that the employer terminated the employee through its actions); *accord Pendleton v. Conoco, Inc.*, 23 F.3d 281, 287 (10th Cir. 1994) (characterizing whether a statement reflected a present resignation as "a classic question of fact for resolution by a jury"); *Healion*, 830 F. Supp. at 1375 (declining to award summary judgment to the employer because "[w]hether [the employee] voluntarily resigned or was instead terminated is an issue of fact for the jury's consideration"); 1B Colo. Prac., Methods Of Practice § 19:8 (7th ed. May 2018) ("[W]hen there is a dispute as to whether an employee resigned or was terminated, the jury is not bound by the employer's interpretation of the facts.").

In other words, while it is true that Plaintiffs testified they were laid off, it was still a jury question whether the actual separation was in fact a termination or a resignation. Regardless of the characterizations used during Plaintiffs' own trial testimony and any resulting ambiguities, I believe there was sufficient evidence for a jury to find that the Plaintiffs did resign—and indeed the jury so found. Of great importance at trial were Exhibits 211 and 234, Plaintiffs Walker's and Wascher's separation documents. On May 27, 2014, Wascher was offered a demotion and given the option to

accept or to decline it. The declination language in his separation document was as follows:

> **Job Offer Declination**
>
> I decline the conditions of employment as stated above, with the understanding that it will result in separation and demobilization no later than June 1, 2014.

Pls.' Trial Ex. 234. Walker signed a similar letter with the same "Job Offer Declination" (but a different separation date) on July 8, 2014. Pls' Trial Ex. 211. Walker and Wascher signed these documents knowing they were separating from the company.

Language later in Plaintiff Wascher's letter lends further support to the jury's constructive discharge finding. On the third page of Exhibit 234, Defendant asked Wascher the following question: " **WHAT IS YOUR PRIMARY REASON FOR LEAVING EXELIS MISSION SYSTEM? (SELECT FROM BELOW):** / Personal issues/reasons." Pls' Trial Ex. 234 at 234–003. It would not make sense for Defendant to ask why Wascher was leaving the company if it did not construe what was happening to be a resignation; there would be no other purpose for such a question. After all, if the company was terminating Wascher, it already would have known the reason for separation.

The evidence at trial was that Plaintiffs Walker and Wascher conflated resignation and termination, believing ultimately that the company simply intended to terminate them. Other employees testified consistent with this state of affairs. Particularly revealing was the testimony (upon cross examination by defense counsel) of Kelly Harris, a Vectrus employee who had been assigned first to Bagram and who then spent several years at Forward Operating Base Shank:

> Q. In July 2014 your employment came to an end; right?
> A. That's correct.
> Q. And it came to an end because Fluor issued a descope; is that right?
> A. Partially.
> Q. Okay. You weren't fired, right, in other words, for misconduct or anything like that?

7

> A. No, sir.
> Q. And you didn't quit; right?
> A. Actually, I did.
> Q. Oh, you did?
> A. I had put in notice, and I think two to three days later we were called in and descoped.
> Q. Okay. So did you take the descope separation?
> A. I did.
> Q. Rather than the quit separation?
> A. Yeah, I did.

Trial Tr. (May 31, 2018) at 21:1–17.[1]

After considering the evidence in its totality, the jury found that Plaintiffs resigned, entering special verdicts concluding that: (1) both men "proved by a preponderance of the evidence that [their] separation from Vectrus constituted a resignation from employment," Jury Verdict Forms, ECF No. 312 at 11 (Wascher), 15 (Walker); and (2) both men faced working conditions that "were so difficult or intolerable that [they] had no reasonable choice but to resign," *id.* at 11 (Wascher), 15 (Walker).

I will not disturb those findings. In addition to the separation letters quoted above, there was ample evidence at trial of Plaintiffs' working conditions and the unique events surrounding their separation from Defendant, which is both summarized (albeit from Plaintiffs' perspective) and cited in Plaintiffs' Response Brief. *See* Corrected Resp. 4–7, 9–10, ECF No. 380. For purposes of this motion, that evidence must be construed in Plaintiffs' favor. *Tyler v. RE/MAX Mountain States, Inc.*, 232 F.3d 808, 812 (10th Cir. 2000). I cannot say that "the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position," as is required for judgment as a matter of law. *Id.* (quoting *Finley v. United States*, 82 F.3d 966, 968 (10th Cir. 1996)); *see also Shaw v. AAA Eng'g. & Drafting, Inc.*, 213 F.3d 519, 529 (10th Cir. 2000)

---

[1] All references to the Trial Transcript are to the Combined Reatltime Transcript for Days 1 through 14.

("Judgment as a matter of law is improper unless the evidence so overwhelmingly favors the moving party as to permit no other rational conclusion.").

## II. Analyzing the Voluntariness of an Employee's Separation Furthers Public Policy Better Than Requiring Strict Adherence to the Pleading of a Wrongful Termination or Constructive Discharge Claim.

Although not dispositive of the present motion, I write further to explain an alternative basis for upholding the jury's verdict. As noted above, Defendant asserts that because Plaintiffs testified they were terminated, they failed to establish a wrongful termination claim through a constructive discharge theory. Although the state of Colorado law on this issue is not entirely clear, the outcome most consistent with the policy behind a wrongful termination claim is that a wrongful separation from employment permits recovery, regardless of whether an employee pleads a wrongful termination or constructive discharge.

My research shows that the first Colorado case to adopt the concept of "constructive discharge" for employment cases was *Colorado Civil Rights Commission v. State By & Through School District No. 1, Bent County*, 488 P.2d 83 (Colo. App. 1971). The court adopted the theory from unfair labor practice cases. *Id.* at 86. It steered clear of a mechanical approach: "The fact of discharge does not depend upon the use of formal words of firing. The test is whether sufficient words or actions by the employer 'would logically lead a prudent person to believe his tenure had been terminated.'" *Id.* (quoting *NLRB v. Trumbull Asphalt Co.*, 327 F.2d 841, 843 (8th Cir. 1964)). Thus, "[a] mere signed statement that a resignation is voluntary . . . does not relieve an employer of the consequences of an act amounting to constructive discharge." *Id.* It is obvious from this case that the judicial doctrine of constructive discharge was intended to apply in situations in which the employee claims that his or her separation from employment was wrongful, but there is evidence that the employee was not terminated by the employer and instead resigned. In such a circumstance,

9

the fact of "voluntary" resignation does not necessarily bar the claim for wrongful discharge. An employee can recover for being "*constructively* discharged" upon a proper factual showing.

Subsequent Colorado cases do not draw a clear line of demarcation between a constructive discharge and a termination. In *Hoffsetz v. Jefferson County School District No. R-1*, 757 P.2d 155 (Colo. App. 1988), the court noted that the plaintiff employee's separation from employment "was processed as a 'quit' by the [defendant] school district," yet the employee filed a grievance alleging he was terminated. *Id.* at 157. Without any additional discussion of the facts, the court of appeals affirmed the lower court's judgment in the plaintiff's favor for constructive discharge, after noting that the jury was properly instructed on the law of constructive discharge and ample evidence supported the jury's finding in the plaintiff's favor. *Id.* at 158.

In *Lathrop v. Entenmann's, Inc.*, 770 P.2d 1367 (Colo. App. 1989), the facts as stated by the court of appeals were that the plaintiff requested to return to work after an injury, but the employer refused, at which time the plaintiff believed he had been "constructively discharged." The court went on to discuss the viability of the plaintiff's claim for constructive discharge, even though the facts showed no evidence of a resignation. *Id.* at 1370.

Yet another instructive case is *Price v. Boulder Valley School District R-2*, 782 P.2d 821 (Colo. App. 1989), *aff'd in part, rev'd in part*, 805 P.2d 1085 (Colo. 1991). The employer in *Price* repeatedly presented the employee with a letter of resignation until the employee finally signed it. The court found that "[t]his fact alone . . . militates against the voluntariness of [the employee's] resignation." *Id.* at 825. Critical to the court's analysis was the fact that the separation was not voluntary, whether it was termed a resignation or termination. *Id.* at 824–25. In other words, the inquiry does not turn on the ultimate mechanical act of whether the employer or the employee makes the final move. The essential question is one of voluntariness.

This focus on voluntariness is consistent with the guidance proffered in *Romero I,* discussed above:

> [T]he operative inquiry related to discharge is not limited to an examination of the particular words used in any exchange between an employee and his or her supervisor or employer, but whether the employee left his or her position voluntarily or involuntarily. In this instance, the operative inquiry is whether the evidence demonstrates that [the employee] left his employment involuntarily, *either* because [the employer] actually fired him *or* because [the employer] constructively discharged him by making his working conditions so intolerable following the exercise of [his rights] that he had no choice but to leave his employment.

2017 WL 3608194, at *4 (examining constructive discharge in the context of a claim for wrongful discharge in violation of public policy). In addition, *Romero I* states that the Tenth Circuit "has recognized that constructive discharge is simply one form of wrongful discharge." *Id.* (citing *Chapman v. Carmike Cinemas*, 307 F. App'x 164, 174 (10th Cir. 2009) (unpublished)).

A subsequent order in the same case also bolsters my reasoning. *See Romero v. Helmerich & Payne Int'l Drilling Co.*, No. 15-cv-00720-NYW, 2017 WL 5900361 (D. Colo. Nov. 30, 2017) (*Romero II*). In *Romero II*, the jury indicated on the verdict form that the employee was *both* actually discharged and constructively discharged. *Id.* at *8–9. The defendant moved for a new trial, in part on the ground that these two findings are irreconcilably inconsistent. *See id.* at *10 ("The crux of Defendant's argument is that because the jury applied two mutually exclusive legal theories in finding for Plaintiff on an element if his claim, the jury must have been confused overall in its findings of fact and application of law."). Noting the court's obligation to reconcile inconsistent verdicts if possible, *see Jarvis v. Commercial Union Assurance Cos.*, 823 F.2d 392, 395 (10th Cir. 1987), the court rejected the defendant's argument. It found "that reconciliation is possible and even intuitive" because the findings "are *logically* consistent in their reflection of the jury's determination that [the employee] did not leave his employment voluntarily." 2017 WL 5900361, at *10–11. The court discounted any confusion as being the likely "result of differing

11

opinions on how to classify the involuntary termination pursuant to a specific legal theory." *Id.* at *11.

Conflicting with these cases are brief statements from courts in the Tenth Circuit that appear to suggest an employee who is terminated cannot maintain a constructive discharge claim. For example, in *Jackson v. Dillard's Department Stores, Inc.*, 92 F. App'x 583, 588 n.5 (10th Cir. 2003) (unpublished), the Tenth Circuit analyzed in a footnote whether the plaintiff stated an alternative claim for constructive discharge under Colorado law. The court stated only, "[The plaintiff] argues she was constructively discharged. This argument is without merit. . . . [The plaintiff] did not resign; she was terminated." *Id.* Similarly, in *Duran v. Flagstar Corp.*, 17 F. Supp. 2d 1195, 1202–03 (D. Colo. 1998), the Honorable Lewis T. Babcock found that an employee did not state a constructive discharge claim, in part because she "did not resign her employment, but instead was terminated for tardiness and absenteeism." Neither of these cases contain any further analysis or cite to any binding authority, however. And my review of Colorado law does not draw such a mechanical boundary between wrongful termination and constructive discharge claims. Regardless of the terminology used by the employee to describe the separation, it is clear to me that Colorado courts intended to create a cause of action for an employee who involuntarily separates from employment for reasons that violate public policy.

The principle that the involuntariness of the plaintiff's departure from employment is essential to a wrongful discharge claim is supported by *Green v. Brennan*, 136 S. Ct. 1769 (2016). There, the Supreme Court analyzed when a wrongful discharge claim becomes a "complete and present" cause of action for claim accrual purposes. Within that analysis, the Court equated constructive discharge with actual discharge, terming them "no different" and noting their common elements:

12

> [O]nly after [an employee] has a complete and present cause of action does a limitations period ordinarily begin to run. *Cf. Mac's Shell Serv., Inc. v. Shell Oil Prods. Co.,* 559 U.S. 175, 189–190, 130 S. Ct. 1251, 176 L. Ed. 2d 36 (2010) (the limitations period for a constructive termination of a franchise agreement starts running when the agreement is constructively terminated). In this respect, a claim that an employer constructively discharged an employee is no different from a claim that an employer actually discharged an employee. An ordinary wrongful discharge claim also has two basic elements: discrimination and discharge. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993); 1 B. Lindemann, P. Grossman, & C. Weirich, Employment Discrimination Law 21–33 (5th ed. 2012) (Lindemann) ("The sine qua non of a discharge case is, of course, a discharge[.]").

*Id.* at 1777.

In the present case, Plaintiffs engaged in an effort to meet a higher burden—a constructive discharge—when all they needed to establish was a discharge, which in fact occurred here. "Constructive discharge" is not a separate stand-alone claim, but a legal fiction created by courts to permit an employee who resigned to try to prove the separation from the employer was actually a discharge. *Campos v. ManTech Int'l Corp.*, No. 14-CV-03088-MSK-MEH, 2016 WL 9710020, at *2 n.4 (D. Colo. Aug. 2, 2016) ("The Court notes that there is no separate 'claim' for constructive discharge recognized under federal law. . . . If the elements of constructive discharge are met, the Court indulges in the legal fiction that the employee's voluntary resignation was, in actuality, involuntary termination of the employee's employment by the employer—hence an adverse action."), *recons. denied*, 2017 WL 4226226 (D. Colo. Apr. 20, 2017).

### III. Judicial Estoppel Does Not Bar Plaintiff Wascher's Claim.

Finally, Defendant argues that Plaintiff Wascher "is judicially estopped from contending that he did not resign, since he represented to the unemployment bureau that his employment ended because his position was eliminated, not because he 'resigned.'" Mot. 2. Defendant pinpoints the following earlier statement by Wascher: "[D]ue to reduction in force for the U.S. military in

13

Afhanistan the DOD contractor force was also reduced and numerous positions were phased out. My position was one of those, and I was sent home." *Id.* at 9.

"The doctrine of judicial estoppel is designed 'to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment.'" *BancInsure, Inc. v. FDIC*, 796 F.3d 1226, 1239–40 (10th Cir. 2015) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001)). Three factors are relevant to a judicial estoppel analysis:

> First, courts ask whether a party's later position is "clearly inconsistent" with its former position. Second, courts ask whether the party "succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled." And third, courts consider "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."

*Id.* at 1240 (quoting *New Hampshire v. Maine*, 532 U.S. at 750–51).

The Tenth Circuit applies the judicial estoppel doctrine "both narrowly and cautiously." *Id.* (quoting *Bradford Hansen v. Harper Excavating, Inc.*, 641 F.3d 1216, 1227 (10th Cir. 2011)); *see also Asarco, LLC v. Noranda Mining, Inc.*, 844 F.3d 1201, 1207 (10th Cir. 2017) (stating that the moving party faces a "difficult task" given the court's "reluctance to impose the harsh remedy" of judicial estoppel) (quoting *Vehicle Mkt. Research, Inc. v. Mitchell Int'l, Inc.*, 767 F.3d 987, 988 (10th Cir. 2014)); 18B Charles Alan Wright., Arthur R. Miller & Edward H. Cooper, Fed. Prac. & Proc. Juris. § 4477 n.16 (2d ed. Sept. 2018) ("Although the Tenth Circuit has come to recognize judicial estoppel, it has not come to love it.").

Against this backdrop, I find that Defendant has not met its burden here. I do not see a clear inconsistency between Wascher's trial testimony and his statement to the unemployment bureau—particularly given that an employee's characterization of his separation is not dispositive,

as established above. Besides, the Tenth Circuit has imposed a restriction that "judicial estoppel only applies when the position to be estopped is one of fact, not one of law." *See BancInsure*, 796 F.3d at 1240. Defendant has not convinced me that the statements it juxtaposes are actually factual, as opposed to legal. At a minimum, Defendant is asking me to attribute a legal significance to Wascher's factual statements, which seems to cross (or at least blur) an impermissible line. For all of these reasons, I conclude judicial estoppel does not provide a basis for judgment as a matter of law in Defendant's favor.

## **CONCLUSION**

In sum, the jury reasonably concluded based on the record in this case that Plaintiffs Walker and Wascher resigned from their employment and proved a claim for constructive discharge. Specifically, the "job offer declination" Plaintiffs signed could reasonably be interpreted as a resignation from employment. I will not disturb the jury's factual finding on this issue. Accordingly, Defendant's Renewed Motion for Judgment as a Matter of Law as to Plaintiffs Steven Wascher's and James Walker's Claims Based on Constructive Discharge [filed June 22, 2018; ECF No. 318] is **denied**.

Dated and entered at Denver, Colorado, this 9th day of October, 2018.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge