IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-02418-MEH

VICTOR CEJKA,
JAMES WALKER,
STEVEN WASCHER, and
JAMIE LYTLE,

    Plaintiffs,

v.

VECTRUS SYSTEMS CORPORATION, f/k/a Exelis Systems Corporation,

    Defendant.

---

**ORDER ON DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AS TO PLAINTIFFS' PUNITIVE DAMAGES CLAIM [ECF NO. 319]**

---

**Michael E. Hegarty, United States Magistrate Judge**.

Pursuant to Federal Rule of Civil Procedure 50(b), Defendant moves the Court for judgment as a matter of law regarding Plaintiffs' recovery of punitive damages. Under Colo. Rev. Stat. § 13-21-102, the jury awarded Plaintiffs Cejka, Walker, Wascher, and Lytle $100,000 each in punitive damages. *See* Am. J. 1–2, ECF No. 344. Defendant contends that the evidence at trial was insufficient to support this award. *See* ECF No. 319. For the following reasons, I **deny** Defendant's motion.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 50(b) provides that "[n]o later than 28 days after the entry of judgment . . . the movant may file a renewed motion for judgment as a matter of law . . . ." Fed. R. Civ. P. 50(b). In analyzing a Rule 50(b) motion, courts should construe the evidence in the record in a light most favorable to the nonmoving party. *Tyler v. RE/MAX Mountain States, Inc.*, 232 F.3d

808, 812 (10th Cir. 2000). Courts must not "weigh evidence, judge witness credibility, or challenge the factual conclusions of the jury." *Deters v. Equifax Credit Info. Servs., Inc.*, 202 F.3d 1262, 1268 (10th Cir. 2000). "Judgment as a matter of law is appropriate 'only if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position.'" *Tyler*, 232 F.3d at 812 (quoting *Finley v. United States*, 82 F.3d 966, 968 (10th Cir. 1996)). Motions under Rule 50(b) "should be cautiously and sparingly granted." *Lucas v. Dover Corp., Norris Div.*, 857 F.2d 1397, 1400 (10th Cir. 1988) (quoting *EEOC v. Prudential Fed. Sav. & Loan Ass'n*, 763 F.2d 1166, 1171 (10th Cir. 1985)).

## **ANALYSIS**

The principal question here is whether, on the evidence introduced at trial, a reasonable jury could have found, beyond a reasonable doubt, that Defendant's conduct was malicious or willful and wanton. In other words, should I even have submitted this issue to the jury? I do not dispute this is a close call. Defendant certainly produced evidence explaining its actions which, if a jury believed it, would belie a punitive damages award. However, I believe the opposite is true—Plaintiffs introduced evidence of malice or willful conduct which, if the jury believed it, would support a statutory punitive damages award. I will summarize that evidence below.

First, there was testimony that Defendant's decisionmakers, such as Donald Askew (whose actions were instrumental to the separation of Plaintiffs from employment) and Country Manager Kevin Daniel, made derogatory statements about Plaintiffs which was evidence of potential malice or willful action. This includes calling Plaintiffs "snakes" or "traitors." *See, e.g.*, Trial Tr. (May 22, 2018) at 59:21 to 60:6, 216:13–14 (Wascher); *id.* (May 31, 2018) at 30:25 to 31:4 (Michael Zink, Plaintiffs' witness).[1] It also includes labeling them as "troublemakers" and engaging in actions that

---

[1] All references to the Trial Transcript are to the Combined Reatltime Transcript for Days 1 through 14.

2

would keep them "in line." *See id.* (May 22, 2018) at 60:20–25 (Wascher); *id* (May 23, 2018) at 320:17–23 (Lytle).

There was also evidence that Defendant's Human Resources (HR) representatives, Nadine Guilbeaux and Venola Riley, were instant messaging with management even as Plaintiffs met with HR to discuss confidential workplace issues—*see id.* (May 23, 2018) at 296:6–15, 298:23 to 300:1 (Lytle); *id.* (June 1, 2018) at 141:16 to 142:18 (Walker)—with adverse consequences for Plaintiffs following soon thereafter.

In addition, Plaintiffs submitted evidence that despite a legal obligation to report incidents relating to security to the United States military, their supervisor became very angry when he learned such reports were made without his knowledge; he screamed at them, instructing them to notify the company first from now on. *E.g.*, Trial Tr. (May 22, 2018) at 238:8–18 (Wascher). Similarly, the United States military's representative who provided direct day-to-day oversight regarding Defendant's security contract at Bagram Air Force Base, Sergeant John Salinas, testified that Brandon Spann, one of Defendant's supervisors, threatened him after these reports were made, instructing him that the security specialists were to go to the company first, not the military. *See id.* (May 23, 2018) at 215:24 to 216:22. Salinas also testified unequivocally that, from his perspective, the security specialists should come directly to him with security issues. *See id.* at 217:4–8.

Of course, there were also the terminations of Plaintiffs Lytle and Cejka, and the forced transfers of Plaintiffs Walker and Wascher to undesirable small, austere forward-operating bases in the theater of war, where daily enemy attacks were experienced, all which formed the underpinning for the jury's verdicts on Plaintiffs' retaliation claims. Although this was a contested fact issue, Plaintiffs contended that the transfers of Walker and Wascher were against Defendant's stated

3

seniority policy. Knowing violation of an employer's policies is certainly evidence of malicious or willful and wanton conduct.

Finally, this trial, like many, included an intangible that is discernible only to someone who watched the entire proceeding. At times there was a subtle, palpable battle occurring between and among witnesses and parties. It flared up with defense witness Robert Redd, who stated (loudly and angrily) in open court concerning the cross examining Plaintiffs' counsel, "He is starting to piss me off." *See id.* (June 4, 2018) at 159:13. It was evident during the testimony of Donald Askew, Sergeant Salinas, and Brandon Spann. It was clear that there had been hard feelings at Bagram Air Force Base between various constituents, including Plaintiffs (who had formed a clique in their time at Bagram), the military, and certain employees of Defendant—an internal psychological battle that had embittered at least some of the participants. This is understandable, given the stress that must have accompanied those serving in Afghanistan during the hostilities there. It was not excessive, it was not disruptive, but it was real. If I saw it, the jury did too, and I believe this atmosphere provided context for what it may (and I do say may, because trials can be as much about perception as reality) have been like at Bagram during the time in question.

I would not have awarded Plaintiffs punitive damages, but that is not the legal standard. A reasonable jury could have believed Plaintiffs' characterization of Defendant's actions, concluded that those actions were, at least at relevant times, malicious or willful and wanton, and rendered a very modest punitive damages award for some of the Plaintiffs. There is no legal error here.

## **CONCLUSION**

For the above reasons, I deny Defendant's Renewed Motion for Judgment as a Matter of Law as to Plaintiffs' Punitive Damages Claim [filed June 22, 2018; ECF No. 319].

Dated at Denver, Colorado, this 9th day of October, 2018.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge