IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-02418-MEH

VICTOR CEJKA,
JAMES WALKER,
STEVEN WASCHER, and
JAMIE LYTLE,

    Plaintiffs,

v.

VECTRUS SYSTEMS CORPORATION, f/k/a Exelis Systems Corporation,

    Defendant.

---

## ORDER ON DEFENDANT'S RENEWED MOTION FOR NEW TRIAL [ECF NO. 331]

---

**Michael E. Hegarty, United States Magistrate Judge**.

    Plaintiffs initiated this employment action on October 30, 2015, against their former employer, Defendant Vectrus Systems Corp. ("Vectrus"), alleging that they suffered adverse employment actions in retaliation for reporting to the United States military what they believed to be conduct by Defendant that adversely affected security at Bagram Air Force Base in Afghanistan. This case was tried to a jury for common law retaliatory termination (Claim I) (all Plaintiffs) and violation of 10 U.S.C. § 2409, the Department of Defense whistleblower statute (Claim II) (Plaintiff Walker). The jury found for Defendant on Plaintiff Cross's claim and for the remaining Plaintiffs under both the common law claims (all Plaintiffs) and the statutory claim (Plaintiff Walker). In the interim, Plaintiff Cross has settled with Defendant.

    Here, Defendant seeks a new trial arguing that the verdict is against the weight of the evidence, prejudicial error occurred during the trial, and substantial justice has not been done. *See* ECF No. 331.

## **LEGAL STANDARD**

Rule 59(a)(1)(A) authorizes a court to grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). Whether to grant a motion for a new trial is committed to the district court's discretion. *See M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 762 (10th Cir. 2009); *see also Iowa Pac. Holdings, LLC v. Nat'l R.R. Passenger Corp.*, 853 F. Supp. 2d 1094, 1097 (D. Colo. 2012) (describing that discretion as "sound"). "A motion for new trial 'is not regarded with favor and should only be granted with great caution.'" *Iowa Pac. Holdings,* 853 F. Supp. 2d at 1097 (quoting *United States v. Kelley*, 929 F.2d 582, 586 (10th Cir. 1991)).

"If 'a new trial motion asserts that the jury verdict is not supported by the evidence, the verdict must stand unless it is clearly, decidedly, or overwhelmingly against the weight of the evidence.'" *M.D. Mark, Inc.*, 565 F.3d at 762 (quoting *Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1284 (10th Cir. 1999)). Stated otherwise, the motion should be granted only "if the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion." *Iowa Pac. Holdings,* 853 F. Supp. 2d at 1097 (quoting *Minshall v McGraw Hill Broad. Co.*, 323 F.3d 1273, 1279 (10th Cir. 2003)). "When reviewing an allegation that a jury's verdict was not supported by evidence, [I] view the record in the light most favorable to the prevailing party." *Patton v. TIC United Corp.*, 77 F.3d 1235, 1242 (10th Cir. 1996).

Whether "the verdict is against the weight of the evidence presents a question of fact, not law." *Id.* Even so, I may not weigh the evidence, pass on the credibility of the witnesses, or substitute my conclusions for those of the jury. *Iowa Pac. Holdings,* 853 F. Supp. 2d at 1097. "The jury has the exclusive function of appraising credibility, determining the weight to be given to the

2

testimony, drawing inferences from the facts established, resolving conflicts in the evidence, and reaching ultimate conclusions of fact." *Snyder v. City of Moab*, 354 F.3d 1179, 1188 (10th Cir. 2003) (quoting *United Phosphorus, Ltd. V. Midland Fumigant, Inc.*, 205 F.3d 1219, 1226 (10th Cir. 2000) (alternations omitted)).

If a motion for new trial is based on an allegedly improper evidentiary ruling and purported prejudicial error, the movant must show that the evidentiary ruling was "both clearly erroneous and so prejudicial that 'it can be reasonably concluded that with or without such evidence, there would have been a contrary result.'" *Id.* (quoting *Hinds v. Gen. Motors Corp.*, 988 F.2d 1039, 1049 (10th Cir. 1993)). "Neither an error in the admission or exclusion of evidence nor an error in a ruling or order of the court, nor anything done or omitted by the court, can be grounds for granting a new trial unless the error or defect affects the substantial rights of the parties." *Id.* (quoting *Stewart v. S. Kan. & Okla. R.R., Inc.*, 36 F. Supp. 2d 919, 920 (D. Kan. 1999)).

## **ANALYSIS**

Undoubtedly this jury trial created several challenges, as any three-and-a-half-week trial is wont to do. It involved several novel legal issues which I address far more thoroughly in separate orders issued this date. However, in the main, the evidentiary presentations went smoothly, counsel were prepared and efficient, the jury was attentive, each side had an opportunity to present their very differing interpretations of the facts, the jury deliberated an appropriate amount of time, and the verdict was split, with Defendant prevailing as to one Plaintiff, and the other four Plaintiffs prevailing and being awarded what can only be described as moderate monetary damages. It is against this backdrop that I address each of the contentions raised by Defendant.

First, Defendant contends that I should not have permitted the jury to deliberate on Plaintiffs' claims for wrongful discharge in violation of public policy under Colorado law. This is one of the

3

complex legal issues that I have addressed in a separate order, and for which I found for the Plaintiffs. I will not repeat that analysis here.

Second, Defendant contends that because Plaintiffs relied on a "constructive discharge" theory in pursuing their wrongful termination claims, and because the evidence supports the fact that they were in fact terminated by Defendant and did not resign, a new trial is required. Again, I address this argument (under the very unique facts presented in this case) in a separate order, and again, I have found for the Plaintiffs on this issue.

Third, Defendant contends that I should not have admitted detailed evidence of "Plaintiffs' alleged reports to the military—much of which was highly salacious (e.g., 'child pornography,' 'human trafficking,' 'espionage,' etc.)—and testimony from military witnesses about its alleged investigation, the November 5, 2013 'raid,' and the barment of eight Vectrus employees from Bagram." Def.'s Mot. for New Trial 2, ECF No. 331. To provide some context, Plaintiffs were security specialists working for Defendant (a defense contractor) at Bagram Air Force Base (BAFB) in Afghanistan. Plaintiffs were among those employees who screened persons wishing to enter into BAFB. Plaintiffs contend they were terminated for informing the military of wrongdoing (affecting security) by Defendant, while Defendant contends that two of the prevailing Plaintiffs were terminated for misconduct, while the other two were terminated for lack of work.

As an initial matter, Defendant argues that it was willing to stipulate that Plaintiffs engaged in protected whistleblowing activity; therefore, evidence of the actual details of the reports, as well as the military response, were irrelevant and prejudicial. I could not disagree more. Plaintiffs' theory was that their reports of serious misconduct by Defendant resulted in an unprecedented event in Defendant's corporate history: the United States military conducting an early morning surprise "raid," effectively arresting eight of Defendant's employees including senior supervisory personnel,

4

and immediately removing them from the country (by flying them from Afghanistan to Dubai). Vectrus' contractual relationships with the United States military are clearly central to their corporate existence. The company's website makes the following claims:

> Vectrus is a leading, global government services company with a history in the services market that dates back more than 70 years. The company provides facility and logistics services, and information technology and network communication services to U.S. government customers around the world. Vectrus is differentiated by operational excellence, superior program performance, a history of long-term customer relationships, and a strong commitment to their mission success. Vectrus is headquartered in Colorado Springs, Colo., and includes about 6,700 employees spanning 177 locations in 21 countries. In 2017, Vectrus generated sales of $1.1 billion.

VECTRUS, http://investors.vectrus.com (last visited Oct. 3, 2018). To exclude evidence of the extent and context of the risk that Plaintiffs' actions potentially posed to Vectrus would eviscerate Plaintiffs' case.

Plaintiffs' response brief adequately explains the legal basis for admission of the content of the whistleblowing disclosures accompanied by an appropriate limiting instruction to the jury, which is what occurred here. *See* Pls.' Resp. 13–20, ECF No. 353. Moreover, I believe the following instruction given to the jury adequately addressed Defendant's concerns:

> You will hear evidence of the nature and extent of alleged wrongful conduct reported by Plaintiffs to the military as well as the military's investigation and response. You are to consider this evidence for the limited purpose of determining whether Plaintiffs have established the elements of their claims including whether Defendant was aware of Plaintiffs' reports and whether the reports and their consequences motivated Vectrus to terminate or constructively terminate the Plaintiffs.
>
> It is not your role to determine whether the alleged conduct in fact occurred. Plaintiffs are not required to prove that the reported conduct occurred nor is Defendant required to prove that the reported conduct did not occur.

Instr. No. 14 ("Evidence for a Limited Purpose"), ECF No. 313. During closing, defense counsel commented on this Instruction extensively, noting that "the military's actions was [sic] evidence that

was admitted only for a limited purpose. . . . It is not your role to determine whether the alleged conduct . . . in fact occurred." Trial Tr. (June 11, 2018) at 92:16–18, 93:2–4.[1]

Furthermore, Plaintiffs alleged and recovered punitive damages against Vectrus. A central theme in the case was the fact that all or most of the witnesses, including the Plaintiffs and Defendants' employees, were current or ex-military; and the attendant attitudes, behaviors, aggression, and resentments that they exhibited to one another were part and parcel of Plaintiffs' theory of the case. It would have been impossible for the jury to understand this case unless they heard at least some content of the whistleblowing complaints, along with the impact that the complaints had on Vectrus in terms of its treatment of Plaintiffs thereafter.

To directly address the "salacious" allegations, and show that they did not play a prominent role in this trial, I will discuss their separate occurrences:

Child Pornograpy

Counsel for Defendant made the first mention of "child pornography" during his opening, which I do not fault, as it is a proper tactic to address highly charged allegations early in the case in order to engage in damage control. *See* Trial Tr. (May 21, 2018) at 195:19–22. Additionally, the words "child pornography" were on a demonstrative exhibit shown (but not discussed) during Plaintiffs' opening. As far as I can determine, it was never mentioned in this trial again.

Espionage

The first mention of "espionage" during the trial was again by defense counsel, during the cross examination of Plaintiff Wascher. *See id.* (May 22, 2018) at 145:12–20. The next was also by defense counsel, during the examination of Plaintiffs' adverse witness Kevin Daniel. *See id.* (May 30, 2018) at 211:1–2. The only other mention was by defense counsel during the direct

---

[1] All references to the Trial Transcript are to the Combined Reatltime Transcript for Days 1 through 14 or the separate transcript for Day 15.

6

examination of defense witness Robert Redd. *See id.* (June 4, 2018) at 98:1–7. Plaintiffs never raised any such allegation before the jury.

Human Trafficking

With regard to "human trafficking," defense counsel raised the issue before the jury during the cross examination of Plaintiff Wascher. Defense counsel questioned Wascher about human trafficking, and Wascher denied ever making any reports about that to his superiors. *See id.* (May 22, 2018) at 145:12–22. Further, Plaintiff Lytle testified that he reported to Army Sergeant Salinas (Plaintiffs' one-time military oversight supervisor) "about human trafficking," explaining it as foreign nationals whose passports were taken from them and they were not allowed to leave. *See id.* at 303:17 to 304:9. Defense counsel asked defense witness Kevin Daniel whether he had ever engaged in human trafficking. *See id.* (May 30, 2018) at 211:11–12. Plaintiff Cross mentioned during examination by defense counsel that the security personnel drafted a "tracking report" whenever they received sensitive information, including "trafficking in persons," a context not materially connected with Defendant's current motion. *See id.* (May 31, 2018) at 178:23 to 179:3. Defense counsel raised the issue on cross examination of Plaintiff Walker, but got the witness to explain that "human trafficking" in Walker's dictionary meant denying a foreign worker access to his or her passport and not allowing that person sufficient sleep. *See id.* (June 1, 2018) at 205:4 to 207:2; 237:23 to 238:22. At that point in the case, Plaintiffs' counsel objected to Defendant's continuing reference to the salacious items such as human trafficking and prostitution, stating that to the contrary, Plaintiffs' case was trying to stay away from such terms. There was a similar discussion on the issue on re-direct of Walker. That was it as far as I can see in the record.

Incidentally, no reference to these items was made during the closing arguments. The brief, isolated references noted above, with virtually no context provided to the jury, and with most

7

references being made by the defense, were not sufficiently flagrant or prejudicial to influence the jury to decide this case on grounds other than the relevant evidence presented at trial. They certainly did not affect Defendant's right to substantial justice.

As part of this argument, Defendant also challenges my admission into evidence of a limited number of official military documents. Plaintiffs laid a proper evidentiary foundation for the admission of the documents. Further, I do not believe the admitted documents unduly prejudiced Defendant. Moreover, to exclude all such evidence when the military's actions were unavoidably intertwined with the facts of this case (the events occurred, after all, at a United States Air Force installation, the United States military provided direct oversight at all times of Defendant's operations, and several witnesses had been in the military in Afghanistan at the time of the events in this case) would have created such a gaping hole in the evidentiary presentation as to risk jury confusion.

Fourth, Defendant contends that I should have admitted evidence that Plaintiff Lytle tried to "reform" a lesbian co-worker into becoming heterosexual and, in furtherance of this effort, sent her a video of himself masturbating in his office. *See id.* (June 1, 2018) at 8:6–19. As background, Defendant contended during the trial that Lytle had engaged in crude and offensive conduct toward others (including foreign nationals) contrary to Defendant's and the United States' missions in Afghanistan, and that his termination for engaging in such conduct was justified. The incident of sexual misconduct noted above was not relied upon in making the original termination decision, but rather, at trial, during the cross examination of Lytle, was offered as after-acquired evidence in support of Defendant's basis for termination.

With regard to Defendant's argument, first, the witness who would have testified about such conduct by Defendant Lytle, Catherine Amoo, was not disclosed by Defendant prior to trial. In fact,

8

Defendant raised this line of testimony at 3:00 p.m. on the fourth day of trial, and Defendant represented that, only at 7:00 a.m. that very morning, did Defendant confirm with Ms. Amoo (who apparently had been employed with Defendant at the time of the underlying facts in this case, then was separated from Defendant's employ during the pendency of this case, and then was re-employed with Defendant before trial) that the alleged event occurred. Defendant also stated that it had known of Ms. Amoo's re-employment only two days prior (although obviously Defendant had constructive knowledge dating back to when Ms. Amoo re-employed with Defendant, which turned out to be December 3, 2016, eighteen months before trial). I noted on the record that, at the very least, Defendant should have disclosed Ms. Amoo as a potential witness when the parties reconvened in the courtroom at approximately 8:00 a.m. on the fourth day of trial, to ameliorate, to the extent possible, the prejudice to Plaintiffs of this surprise evidence. On that basis, at the time of the argument (out of the hearing of the jury), I sustained Plaintiffs' objection. I continue to believe that this ruling was proper. As a side note, Plaintiffs contended at trial that prior to that point, Defendant had never raised an after-acquired evidence defense in any context or any pleading.

Second, the Court entertained a later discussion (during the second week of trial) about this matter, at which time Defendant noted it had produced during discovery documents referencing this incident. In light of that discussion, I made an additional ruling under Fed. R. Evid. 403 that the evidence concerning Lytle's misconduct was unfairly prejudicial to Plaintiffs. As an initial matter, it was cumulative to the plethora of other "bad conduct" evidence against Lytle that Defendant admitted at trial. Moreover, during the jury selection process, one of the venire, who was eventually seated as a juror for the trial, sua sponte identified herself as a lesbian and, during questioning, made the following statement: "My only concern is as a lesbian I don't know what the situation is with you being transgendered [referring to Plaintiff Cross, who at the time of trial was a transgendered female], but if that was the reason you were fired I would probably be a little biased." *See id.* (May

9

21, 2018) at 95:17–19. I determined that if the evidence of Plaintiff Lytle harassing a co-worker about her sexual preference was admitted, Lytle's right to a fair trial would be jeopardized because of the potential bias of this juror. I also noted that at the time of jury selection, had Plaintiffs been apprised of the potential for this line of questioning, in light of the comment of the lesbian juror, Plaintiffs would likely have made a "for cause" objection to the juror or, failing that, exercised one of their peremptory challenges to strike the juror. Therefore, I do not believe my evidentiary rulings on the admissibility of Lytle's alleged sexual misconduct were erroneous.

Even considering all of Defendant's arguments in the aggregate, I find that this was a fundamentally fair trial. Other than Plaintiff Lytle's alleged sexual misconduct in that one excluded instance, Defendant was permitted to freely introduce multiple allegations of misconduct by all of the Plaintiffs. The evidence was certainly sufficient for a jury to determine that the Cejka and Lytle termination decisions that were based on such misconduct had a legitimate, legal basis, the same for the Walker and Wascher alleged layoffs. Alternatively, Plaintiffs' evidence of retaliatory motive was sufficient to decide the case the other way. I will not substitute my judgment for the jury's in such an instance. As explained above, "[t]he jury has the exclusive function of appraising credibility, determining the weight to be given to the testimony, drawing inferences from the facts established, resolving conflicts in the evidence, and reaching ultimate conclusions of fact." *Snyder v. City of Moab*, 354 F.3d 1179, 1188 (10th Cir. 2003) (quoting *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1226 (10th Cir. 2000) (alterations omitted)).

## **CONCLUSION**

In conclusion, for the foregoing reasons, I **deny** Defendant Vectrus Systems Corporation's Motion for a New Trial [filed July 19, 2018; ECF No. 331].

Dated and entered at Denver, Colorado, this 9th day of October, 2018.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge